OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION, BEST, PRESIDENT, APPELLANT, *v.* COMMUNICATIONS WORKERS OF AMERICA [AFL-CIO] ET AL., APPELLEES.

(No. 84AP-339 — Decided September 26, 1985.)

*Lucas, Prendergast, Albright, Gibson & Newman, James E. Melle* and *Robert J. Walter,* for appellant.

*Benesch, Friedlander, Coplan, Aronoff & Feibel* and *Orla E. Collier II,* for appellee Communications Workers of America.

*Porter, Wright, Morris & Arthur* and *Charles Warner,* for appellees Arthur L. Evans et al.

STRAUSBAUGH, J. Plaintiff appealed the decision of the court of common pleas which sustained defendants' motion to dismiss/motion for summary judgment.

As amended, plaintiff's complaint claimed that the defendants conspired to take its membership; that defendants conspired to destroy the Ohio Civil Service Employees Association ("OCSEA"); that defendants interfered with OCSEA's collective bargaining relationships; that defendants made untruthful statements in support of their solicitation of OCSEA members; finally, that defendants violated R.C. 1331.01 and 1331.04, again in competition for public employees. The remaining causes

of action related to claims against individual defendants for alleged conversion of files and records and also the breach of duty of former OCSEA employees.

Plaintiff's motion for a temporary restraining order was twice denied. Plaintiff's motion for preliminary injunction was referred to Referee Rod Ensminger for hearing. Hearings were held beginning on April 26, 1983 and concluding on May 11, 1983.

On May 25, 1983, OCSEA affiliated with the American Federation of State, County and Municipal Employees ("AFSCME"), an affiliate of the AFL-CIO. That same day, AFSCME, on behalf of itself and its new affiliate OCSEA, invoked the AFL-CIO Constitution's Article XX arbitration provision against defendants.[1]

On June 21, 1983, defendants filed a motion to stay pending arbitration pursuant to R.C. 2711.02.

On July 26, 1983, AFL-CIO Umpire Lesnick gave preliminary notice of his decision in the Article XX arbitration, finding that OCSEA was an AFL-CIO affiliate as of May 25, 1983, and granting OCSEA the relief requested under Article XX.

On July 27, Judge Martin issued a decision staying all further proceedings in the common pleas court case pending conclusion of the Article XX arbitrations. On August 19, 1983, defendants filed their joint motion to dismiss/motion for summary judgment. Defendants maintained as a matter of law that by commencing Article XX proceedings and obtaining relief therein, plaintiff was barred by Section 20, Article XX from further pursuing its action through the courts.

On October 5, 1983, Umpire Lesnick issued his decision on defendants' complaint in case No. 83-53. Umpire Lesnick

held that, with two exceptions, OCSEA's continuation of the case in common pleas court in fact violated Section 20, Article XX.

On January 13, 1984, Referee Ensminger issued his report and determined that, as respecting claims for return of OCSEA files and records, all files and records other than legal case files had been returned. The legal case files were held to be the property of the client, not OCSEA.

On March 1, 1984, the trial court issued its judgment entry dismissing all claims against defendants relating to solicitation of public sector employees. The judgment entry implemented Umpire Lesnick's decision of October 5, 1983 in the Article XX arbitration. The judgment entry provided:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that defendants' Joint Motion to Dismiss/Motion for Summary Judgment should be and hereby is sustained, that all claims for relief against defendant Communications Workers of America, Communication[s] Workers of America/Council of Public Workers and defendant Martin Hughes are hereby dismissed with prejudice, and that all claims for relief against the remaining defendants, except those for return of OCSEA files and records and for breach of fiduciary duty of former OCSEA employees which are separable from solicitation of OCSEA members, are hereby dismissed with prejudice."

Accordingly, the trial court's decision and judgment entry did not operate as a final judgment with respect to claims against individual defendants seeking return of OCSEA files and records; nor, for claims for damages for breach of duty, separable from solicitation, of former OCSEA employees. These claims are still pending and are not part of this appeal. Plaintiff asserts the following assignments of error:

"I. The trial court erred in grant-

---

[1] Article XX is provided in part in the Appendix at 131.

ing summary judgment for all defendants because it does not appear from the evidence that reasonable minds can come to one conclusion adverse to plaintiffs-appellants [sic]; there were genuine issues of material fact; and, defendants-appellees were not entitled to judgment as a matter of law.

"II. The judgment is contrary to the manifest weight of the evidence.

"III. The trial court erred when it sustained defendants' joint motion for summary judgment and dismissed, with prejudice, all claims for relief: (a) against defendant Communications Workers of America, Communications Workers of America/Council of Public Workers and defendant Martin Hughes; and (b) against the remaining defendants, except those for return of OCSEA files and records and for breach of fiduciary duty of former OCSEA employees which are separable from solicitation of OCSEA members.

"IV. The trial court erred in totally relying upon the proceedings conducted under Article XX of the AFL-CIO Constitution to bar plaintiffs' [sic] claims against all defendants.

"V. The trial court erred in limiting plaintiffs' [sic] claims against its former employees to only those for breach of 'fiduciary duty.'

"VI. The trial court erred in dismissing plaintiffs' [sic] claims for conspiracy against all defendants.

"VI [sic]. The trial court erred when it sustained defendants' joint motion for summary judgment and dismissed with prejudice plaintiffs' [sic] claims to enforce the non-competition agreements of defendants."

Article XX of the AFL-CIO Constitution provides the mechanism for dispute resolution among the union's affiliates. A decision of an umpire is binding upon all parties and an affiliate cannot turn to a court to enforce or circumvent an Article XX determination. Just as an affiliate cannot evade Article XX,

so too, an individual union member cannot press any claims which would negate the umpire's decision; an individual union member cannot accomplish something forbidden to the union. These views are well-settled and beyond dispute.

The determinative issue of this appeal is whether Article XX of the AFL-CIO Constitution is binding upon the plaintiff with regard to activities that occurred prior to the plaintiff's affiliation with AFSCME. There is no doubt that any activity which occurred after the affiliation of the plaintiff with AFSCME is barred by the Article XX actions.

Plaintiff contends that any activity which occurred prior to affiliation cannot be encompassed within the confines of Article XX. Therefore, plaintiff's position is that the umpire was without authority to arbitrate any causes of action which arose prior to affiliation.

Defendants have cited numerous cases holding that Article XX actions cannot be enforced or circumvented by court proceedings. However, the cases cited by both parties involve unions which were at all times affiliated with the AFL-CIO and therefore within the purview of Article XX. Neither party cited, and this court was unable to locate, any cases dealing with a union which initially was not affiliated at the time certain causes of action arose and which later became affiliated. The applicability of Article XX to pre-affiliation activities appears to be a case of first impression.

The purpose of Article XX is to prevent inter-union turmoil and competition harmful to the labor movement as a whole. It is a contractual, private arbitration proceeding designed to prevent lengthy, deleterious litigation. Therefore, special deference is to be afforded such arbitration proceedings. *Jou-Jou Designs, Inc.* v. *Internatl. Ladies Garment Workers Union, AFL-CIO* (C.A.2, 1981), 643 F. 2d 905, 911.

Plaintiff does not disagree with the purpose of Article XX, but rather with its scope. The majority of plaintiff's assignments of error rely on the proposition that Article XX only applies to violations which occur *after* affiliation.

The umpire's decisions do not give a clearly defined answer to the question of pre-affiliation activities. Decision 83-37 held that OCSEA became affiliated with AFSCME on May 25, 1983. In case No. 83-53, the umpire stated:

"I do not believe, however, that Section 20 should prohibit those aspects of the Columbus case from going forward that seek return of OCSEA files and records, or damages for breach of duty of former OCSEA employees. These aspects of the suit challenge actions *completed prior to affiliation,* and are separable from solicitation of members and other matters closer to Article XX concerns. * * *" (Emphasis added.)

Thus, the umpire indicates that any disputes ongoing between the two unions at the time of affiliation would be the concern of an Article XX arbitration.

However, plaintiff asserts that under no circumstances did it intend to waive any cause of action arising from defendants' pre-affiliation activities.

We find that Article XX precluded plaintiff from bringing any court action encompassed by its jurisdiction, regardless of whether the action arose pre- or post-affiliation. Two considerations require this conclusion. First, Article XX was clearly meant to resolve disputes between affiliates. Its application is not triggered by a particular time; rather, the key consideration is that a dispute in fact exists between affiliates. However or whenever the dispute originated, it is clear that when the parties turned to the arbitration proceeding, they were both affiliates and therefore were required to settle all points of contention within the parameters of Article XX.

Second, when OCSEA became affiliated with the AFL-CIO via its affiliation with AFSCME, it accrued benefits and obligations. An important obligation was the tacit consent of OCSEA to adhere to the Constitution of the AFL-CIO, which requires that all affiliates resolve disputes in accordance with Article XX. If we held that Article XX did not apply to pre-affiliation disputes, we would allow an AFL-CIO member to use the court system for dispute resolution in derogation of established procedures.

Therefore, the first assignment of error, contending that there were genuine issues of fact and that defendants were not entitled to judgment as a matter of law, is overruled. Article XX applies and plaintiff's claims have therefore already been adjudicated. Likewise, the second assignment of error, maintaining that the judgment is contrary to the manifest weight of the evidence, is also overruled. The third assignment of error alleges basically the same mistakes of law and therefore must also be overruled. The fourth assignment of error, urging that Article XX does not bar plaintiff's claims, and the sixth assignment of error, contending that it was error to dismiss the conspiracy claims, must both be overruled for the same reasons.

Plaintiff's assignments of error which rely on the idea that Article XX did not apply are overruled. Article XX was applicable to all disputes between the affiliates except those specifically rejected by the umpire. In the instant case, the trial court held that the plaintiff's claims against defendants for return of files and for breach of duty by former employees were not the subject of Article XX action. Adjudication of these actions may proceed because they were not included as part of the summary judgment.

The plaintiff asserts that the umpire's decision addressed only the duty of former OCSEA employees, rather than the more limited fiduciary duty which the trial court placed in the judg-

ment entry. A review of the record indicates that both the referee and the trial court intended to adopt the umpire's ruling; therefore, the judgment entry limiting plaintiff's claims to breach of fiduciary duty was in error. The fifth assignment of error is sustained.

In the seventh assignment of error, plaintiff urges that the trial court erred when it sustained the motion for summary judgment and dismissed the claim dealing with the non-competition agreements of several of the defendants. The umpire did not specifically address this issue as part of the Article XX proceeding. Similarly, this issue was not addressed by either the referee or the trial court. We hold that Article XX is not applicable to such a contract between a union and a former employee. This issue is comparable to considering the duties of former employees, which cause of action was specifically exempted by the umpire. Therefore, plaintiff's seventh assignment of error is sustained.

On remand, the trial court is directed to delete the term "fiduciary," and consider the possible breach of any duty owed to OCSEA by its former employees. Also, the plaintiff's claims regarding the non-competition clauses are to be adjudicated. The remaining assignments of error are overruled.

Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

McCORMAC and STILLMAN, JJ., concur.

STILLMAN, J., retired, of the Eighth Appellate District, was assigned to ac-

tive duty under authority of Section 6(C), Article IV, Ohio Constitution.

Appendix
"ARTICLE XX
"SETTLEMENT OF INTERNAL
"DISPUTES

"Section 1. The principles set forth in this Article shall be applicable to all affiliates of this Federation, and to their local unions and other subordinate bodies.

"Sec. 2. Each affiliate shall respect the established collective bargaining relationship of every other affiliate. No affiliate shall organize or attempt to represent employes as to whom an established collective bargaining relationship exists with any other affiliate. For purposes of this Article, the term, 'established collective bargaining relationship' means any situation in which an affiliate, or any local or other subordinate body thereof, has either (a) been recognized by the employer (including any governmental agency) as the collective bargaining representative for the employes involved for a period of one year or more, or (b) been certified by the National Labor Relations Board or other federal or state agency as the collective bargaining representative for the employes.

"Sec. 3. Each affiliate shall respect the established work relationship of every other affiliate. For purposes of this Article, an 'established work relationship' shall be deemed to exist as to any work of the kind which the members of an organization have customarily performed at a particular plant or work site, whether their employer is the plant operator, a contractor, or other employer. No affiliate shall by agreement or collusion with any employer or by the exercise of economic pressure seek to obtain work for its members as to which an established work relationship exists with any other affiliate, except with the

consent of such affiliate. This section shall not be applicable to work in the railroad industry.

"Sec. 4. In the event that any affiliate believes that such special and unusual circumstances exist that it would be violative of its basic jurisdiction or contrary to basic concepts of trade union morality or to the constitutional objectives of the AFL-CIO or injurious to accepted trade union work standards to enforce the principles which would apply in the absence of such circumstances, such organization shall nevertheless observe such principles unless and until its claim is upheld in the manner prescribed in Section 17 of this Article.

"* * *

"Sec. 7. The President shall establish procedural rules for the handling of complaints under this Article so that all affiliates involved in or affected by a dispute will have notice thereof, will have an opportunity for the voluntary settlement of the dispute, and, in the event of a failure to reach a voluntary settlement, will have a full and fair hearing before an Impartial Umpire. The rules shall be such as to insure a speedy and early disposition of all complaints arising under this Article.

"Sec. 8. The President shall appoint a permanent mediator or mediators knowledgeable about the labor movement and with an ability to assist parties to disputes to resolve their differences amicably. Any affiliate which claims that another affiliate has violated this Article may, by its principal officer, file a complaint with the President. Upon receipt of such complaint the President shall designate the mediator and direct that all affiliates involved or affected meet with such mediator in an effort to effect a settlement. The mediator's terms of employment shall be established by the President with the approval of the Executive Council.

"Sec. 9. A panel of Impartial Umpires composed of prominent and respected persons shall be established. The members of the panel shall be selected by the President with the approval of the Executive Council. If voluntary settlement of a dispute is not reached within fourteen days after the appointment of a mediator or mediators, a hearing shall be held before an Impartial Umpire selected from such panel. Impartial Umpires shall be assigned on a rotating basis, subject to their availability to conduct hearings. The terms of employment of the members of the panel shall be established by the President, with the approval of the Executive Council.

"* * *

"Sec. 17. Any affiliate which claims justification under Section 4, for action, which would, in the absence of such justification violate the provisions of this Article, shall process its claim, prior to taking action, under the provisions of this Section. Such claim shall set forth the basis upon which the claim is made and the action which the affiliate proposes to take. The claim shall thereafter be processed as provided in this Article except that the determination as to whether the facts justify the proposed action shall not be made by the Impartial Umpire. The Impartial Umpire shall determine whether the proposed action would violate the provisions of this Article in the absence of justification, shall find the facts with respect to the claim of the justification, and submit a report to the Executive Council. The Executive Council shall determine on the report of the Impartial Umpire whether the proposed action would violate the provisions of this Article in the absence of justification; and, if it concludes by majority vote that the proposed action would so violate it shall find such justification only by a vote of two-thirds of the membership of the Council.

"* * *

"Sec. 20. The provisions of this Article with respect to the settlement and determination of disputes of the nature described in this Article shall constitute the sole and exclusive method for settlement and determination of such dispute and the provisions of this Article with respect to the enforcement of such settlements and determinations shall constitute the sole and exclusive method for such enforcement. No affiliate shall resort to court or other legal proceedings to settle or determine any disputes of the nature described in this Article or to enforce any settlement or determination reached hereunder.